IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RUDY TENORIO, as next friend of
PRISCILLA TENORIO,

      Plaintiff,

vs.                                                Civ. No. 02-545 MV/ACT

CITY OF HOBBS, CHARLES CUNNINGHAM,
DONALD JACKSON, COREY HELTON,
JAMES TORRES, CARLOS HERNANDEZ and
HOBBS POLICE OFFICERS JOHN DOE,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment, filed on March 14, 2003 **[Doc. No. 28]**. The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that the motion is well-taken and will be **GRANTED.**

## BACKGROUND

On January 28, 2001, City of Hobbs Police Officers Charles Cunningham, Donald Jackson, Corey Helton, James Torres and Carlos Hernandez (collectively, the "Officers") received a report from dispatch that an armed woman wearing a black coat, white shirt and grey pants was walking down Scharbauer Street, knocking on doors in the neighborhood and pointing a gun at each door while waiting for someone to answer. The report from dispatch was based on a tip from Virginia Teeter, who called 911 from her home at 1231 West Scharbauer Street. Ms. Teeter informed dispatch that there was a woman standing at the front door of the house across the street from her with a gun in her hand pointed at the door. She described the woman as Spanish, wearing a black

coat, white t-shirt and grey pants. While she was on the telephone with dispatch, Ms. Teeter continued to observe the suspect and reported that the suspect stepped down from the porch onto the sidewalk and began walking east. When asked by dispatch whether she could see the weapon in the suspect's hand, Ms. Teeter responded yes. She also stated as follows: "It looks like uh, all I can tell you, it looks like a gun of some kind. I don't know whether it's a toy gun, a real gun, or what it is." (Transcript of 911 Call at 2). When dispatch then asked her if it was a handgun, Ms. Teeter replied yes.

The Officers all responded to the call from dispatch. When they arrived at the 2000 block of Scharbauer Street, they observed the suspect, later identified as Priscilla Tenorio, standing on the sidewalk wearing a black coat, white shirt and grey pants. The Officers could not see her hands or whether she was holding a gun. They parked their patrol units at a distance from Ms. Tenorio, exited their vehicles, stood behind their car doors and drew their weapons. Officer Helton spoke to Ms. Tenorio using the loud speaker from his vehicle, instructing her to raise her hands. When Ms. Tenorio did not comply, Officer Helton asked her whether she had a gun. She pulled a gun from her coat pocket and dropped it at her feet. Officer Helton then instructed Ms. Tenorio to walk towards his vehicle and away from the gun. When Ms. Tenorio again did not comply, Officer Cunningham and Officer Jackson approached her from behind and Officer Jackson handcuffed her. According to Plaintiff, the Officers realized early on during the encounter that Ms. Tenorio suffered from a mental handicap. Plaintiff also alleges that Ms. Tenorio was sobbing during the encounter.

Once Ms. Tenorio was handcuffed, the Officers realized that the gun was in fact a toy. The Officers patted her down to determine if she had any other weapons. Once the pat-down confirmed that she did not have any other weapons, the Officers removed the handcuffs and returned Ms.

Tenorio to the custody of her parents. According to Plaintiff, Ms. Tenorio's parents attempted to intervene on their daughter's behalf, explaining that Ms. Tenorio suffers from Downs Syndrome, that she did not have a real gun and that the handcuffs were hurting her. Ms. Tenorio was in handcuffs for approximately one and one-half minutes, although Plaintiff alleges that it seemed to Ms. Tenorio that she was in handcuffs for five minutes. The entire encounter lasted for four and one-half minutes.

On May 14, 2002, Plaintiff commenced the instant action under 42 U.S.C. §1983, claiming that the Officers' detention of Ms. Tenorio violated her Fourth and Fourteenth Amendment rights. Specifically, the Complaint alleges that Ms. Tenorio's seizure was unlawful and unreasonable and that the Officers used excessive and unreasonable force. The complaint also includes state law claims for false arrest and false imprisonment.

On March 14, 2003, Defendants filed the instant motion for summary judgment. Plaintiff filed a response in opposition on April 23, 2003. Defendants' reply papers followed on May 6, 2003.

## **STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Jones v. Kodak Medical Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999). Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). There is no requirement that the moving party negate the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1991) (citations omitted). Rather than "merely show there is some metaphysical doubt as to the material facts," the nonmoving party is required to "go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial." *Kaus v. Standard Ins. Co.*, 985 F. Supp 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See Anderson*, 477 U.S. at 248. Upon a motion for summary judgment, the Court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus*, 985 F. Supp at 1281.

## DISCUSSION

In support of their motion for summary judgment, Defendants first claim that, as a matter of law, the encounter between the Officers and Ms. Tenorio constituted a valid investigatory detention. Next, Defendants argue that, because Ms. Tenorio's detention did not violate her constitutional rights, the Officers are entitled to qualified immunity. Finally, Defendants contend that, based on the undisputed facts, Plaintiff cannot establish the elements necessary to support a finding of municipal liability on the part of the City of Hobbs. The Court will address these issues in turn.

I.      Investigative Detention

The reasonableness of a seizure under the Fourth Amendment is a determination of law. *See United States v. Walker*, 933 F.2d 812 (10th Cir. 1991). Investigative detentions are "Fourth Amendment seizures of limited scope and duration and must be supported by a reasonable suspicion of criminal activity." *United States v. Davis*, 94 F.3d 1465, 1468 (10th Cir. 1996). In *Terry v. Ohio*, the Supreme Court established that an investigative detention comports with the Fourth Amendment only if the officer's action "was justified at its inception . . . and was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. 1, 20 (1968). An investigative detention is justified at its inception where the officer has "an articulable and reasonable suspicion that the person detained is engaged in criminal activity." *United States v. King*, 990 F.2d 1552, 1557 (10th Cir. 1993). The officer "must be able to articulate something more than an 'inchoate and unparticularized suspicion or hunch.'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (citations omitted). Further, "reasonable suspicion must exist at all stages of the detention." *United States v. Soto-Cervantes*, 138 F.3d 1319, 1322 (10th Cir. 1998), *cert. denied*, 525 U.S. 853 (1998). Once the concern that justifies an initial stop is dispelled, any further detention will violate the Fourth Amendment. *See Id.*

      A.      Justification at Inception

In the instant case, the Officers had an objectively reasonable basis to suspect that Ms. Tenorio was engaged in criminal activity. The Officers had received a report from dispatch that an armed woman wearing a black coat, white shirt and grey pants was walking down Scharbauer Street, knocking on doors in the neighborhood and pointing a gun at each door while waiting for someone to answer. When they arrived at Scharbauer Street, they saw Ms. Tenorio, who matched the

description provided by dispatch. The report from dispatch was based on a tip from a neighbor, who provided dispatch with her name and address and gave a detailed account of the suspect's actions. Even without independent police corroboration, reasonable suspicion may be founded on such a citizen-informant tip which is not anonymous and explains in detail the informant's basis of knowledge. *See United States v. Tucker*, 305 F.3d 1193, 1201 (10th Cir. 2002), *cert. denied*, 537 U.S. 1223 (2003). Accordingly, the seizure of Ms. Tenorio was justified at its inception.

      B.      <u>Reasonably Related in Scope to Circumstances</u>

The Officers' actions during the detention, which included drawing their weapons, handcuffing Ms. Tenorio and conducting a pat-down search, were reasonable under the circumstances surrounding Ms. Tenorio's detention. The Tenth Circuit "has long defended the ability of police officers to conduct safe investigatory stops." *United States v. Merkley*, 988 F.2d 1062, 1064 (10th Cir. 1993). A police officer "faced with the possibility of danger, has a right to take reasonable steps to protect himself and an obligation to ensure the safety of innocent bystanders, regardless of whether probable cause to arrest exists." *Id.* Accordingly, while acknowledging that "[t]here are no hard-and-fast rules regarding the reasonableness of force used during investigatory stops," the Tenth Circuit has held that, "because safety may require the police to freeze temporarily a potentially dangerous situation, both the display of firearms and the use of handcuffs may be part of a reasonable *Terry* stop." *Id.*; *see also United States v. Perdue*, 8 F.3d 1455, 1462 (10th Cir. 1993) ("'[T]he use of guns in connection with a stop is permissible where the police reasonably believe [the weapons] are necessary for their protection.'") (citation omitted); *United States v. Edwards*, 103 F.3d 90, 93 (10th Cir. 1996) ("[U]nder our precedents, police may draw guns and use handcuffs during a *Terry* stop when, under the totality of the circumstances, they reasonably believe such steps to be necessary

to protect themselves."); *Gallegos v. City of Colorado Springs*, 114 F.3d 1024, 1030 (10th Cir. 1997) ("[A] *Terry* stop does not automatically elevate into an arrest where police officers use handcuffs on a suspect . . ."). It also is well-settled that, in the course of a lawful investigative detention, an officer may conduct a limited protective search for weapons. *See Davis*, 94 F.3d at 1468. Specifically, an officer is authorized to conduct "a limited patdown for weapons where a reasonably prudent officer would be warranted in the belief, based on 'specific and articulable facts,' that he is dealing with an armed and dangerous individual." *Maryland v. Buie*, 494 U.S. 325, 332 (1990) (citation omitted).

In the instant case, when the Officers first observed Ms. Tenorio, they could not see her hands or whether she was holding a gun. Given the report from dispatch, it was not unreasonable for the Officers to suspect that Ms. Tenorio was concealing a gun in violation of the law. Given their suspicion, it also was not unreasonable for the Officers to take the safety measures of positioning themselves behind their car doors and drawing their weapons.

When Officer Helton instructed Ms. Tenorio to raise her hands, she did not comply. At that point, Officer Helton asked Ms. Tenorio whether she had a gun and, in response, she pulled a gun from her coat pocket and dropped it at her feet. Ms. Tenorio then failed to comply with Officer Helton's instruction that Ms. Tenorio walk towards his vehicle and away from the gun. Given Ms. Tenorio's failure to comply with instructions in combination with the fact that she produced a gun from her pocket, it was not unreasonable for Officer Jackson to believe that securing the scene warranted placing Ms. Tenorio in handcuffs. This conclusion is no less valid even if, as Plaintiff alleges, Ms. Tenorio's mental handicap was either apparent to the Officers or made known to them by her parents.

It was only after Ms. Tenorio was handcuffed that the Officers realized that the gun was in fact a toy. After conducting a pat-down search, which is well within the boundaries of an investigative detention, the Officers immediately removed the handcuffs from Ms. Tenorio and returned her to the custody of her parents. The Court is not unsympathetic to the traumatic effect that being handcuffed must have had on Ms. Tenorio. Moreover, the Court does not doubt that Ms. Tenorio perceived that she was in handcuffs for five minutes and that she sobbed throughout the incident. The Court, however, cannot use Ms. Tenorio's subjective experience as the standard by which to gauge the reasonableness of the Officers' actions. In actuality, Ms. Tenorio was in handcuffs for only one and one-half minutes and the entire stop lasted for only four and one-half minutes. During this brief period, the Officers "diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the [suspect]." *United States v. Sharpe*, 470 U.S. 675, 686 (1985). Once their suspicions were dispelled, the Officers released Ms. Tenorio. The Court notes that there are no allegations of bodily or physical injury. Thus, even accepting Plaintiff's allegations as true, as a matter of law, the conduct of the Officers was objectively reasonable under the Fourth Amendment. Moreover, as "[c]laims of excessive force are analyzed under the objective reasonableness standard of the Fourth Amendment," Plaintiff's allegations are insufficient to set forth an excessive force claim. *Rucker v. R.G. Hampton*, 49 Fed. Appx. 806, 809 (10th Cir. 2002) (unpublished opinion).

II.     Qualified Immunity

The issue of whether qualified immunity exists is a question of law. *See Guffey v. Wyatt*, 18 F.3d 869, 871 (10th Cir. 1994). This issue is to be resolved at the earliest possible stage of litigation. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). To determine whether an officer is entitled to

qualified immunity, the court first must consider "this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* There is no necessity for further inquiry "[i]f no constitutional right would have been violated were the allegations established." *Id.* If, however, "a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.*

As set forth above, accepting Plaintiff's allegations as true, the conduct of the Officers was objectively reasonable under the Fourth Amendment. Accordingly, taken in the light most favorable to Plaintiff, the facts alleged fail to establish that the Officers' conduct violated a constitutional right. Thus, no further inquiry is needed in order to determine that the Officers are entitled to qualified immunity.

III.     Municipal Liability

Plaintiff alleges a §1983 claim against Defendant City of Hobbs for failure to train, supervise and control the Officers. In order to establish a city's liability under §1983 on the basis of inadequate police training in the use of force, a plaintiff must show that:

> (1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city toward persons with whom the police officers come into contact; and (4) there is a direct causal link between the constitutional deprivation and the inadequate training.

*Allen v. Muskogee, Oklahoma*, 119 F.3d 837, 841-42 (10th Cir. 1997), *cert. denied*, 522 U.S. 1148 (1998).

As explained above, the Officers' conduct during the stop of Ms. Tenorio was objectively reasonable under the Fourth Amendment. Also as explained above, the facts viewed in the light most

favorable to Plaintiff do not set forth an excessive force claim. Accordingly, Plaintiff cannot establish that the Officers exceeded constitutional limitations on the use of force. Thus, Plaintiff cannot satisfy even the first element required to establish municipal liability.

IV.     State Law Claims

Under 28 U.S.C. §1367, this Court has discretion to dismiss claims supported only by supplemental jurisdiction after the dismissal of all claims over which it had original jurisdiction. The Tenth Circuit has stated that a district court has discretion to try state claims in the absence of any triable federal claims. *See Thatcher Enterprises v. Cache County Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990). That discretion, however, is to be exercised only "in those cases in which, given the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction." *Id.* Moreover, "[n]otions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Id.*

The Court finds no compelling reason to exercise supplemental jurisdiction over Plaintiff's state law claims. Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and dismisses them without prejudice.

**CONCLUSION**

The Court finds, as a matter of law, that the Officers' detention of Ms. Tenorio constituted a valid investigatory detention and thus was objectively reasonable under the Fourth Amendment. Accordingly, the detention did not violate Ms. Tenorio's constitutional rights. Because the detention did not violate Ms. Tenorio's constitutional rights, the Officers are entitled to qualified immunity. Similarly, because Plaintiff cannot establish that the Officers exceeded constitutional limitations on the use of force, the City of Hobbs is not liable on the basis of inadequate police training.

Accordingly, all of Plaintiff's claims under §1983 must be dismissed. In addition, the Court exercises its discretion to dismiss the remainder of Plaintiff's claims which are supported only by supplemental jurisdiction.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment **[Doc. No. 28]** is **GRANTED**.

**DATED** this 31st day of March, 2004.

_____
MARTHA VAZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE

Attorney for Plaintiff:
Jon C. Fredlund

Attorney for Defendants:
Zachary S. Rigdon